# EXHIBIT 1

Filed
D.C. Superior Court
11/08/2021 13:34PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| **ABDULKADIR MOHAMED**<br>5415 Connecticut Avenue, NW<br>Apt. 721<br>Washington, DC 20015<br><br>*Plaintiff,*<br><br>v.<br><br>**GEORGE WASHINGTON UNIVERSITY**<br>2121 I Street, NW<br>Washington, DC 20052<br><br>-and-<br><br>**LINCOLN NATIONAL CORPORATION**<br>d/b/a(s) herein:<br><br>Lincoln Financial Group<br>-and-<br>Liberty Life Assurance Company of<br>Boston, a.k.a. Leaves Services<br>100 Liberty Way #35<br>Dover, NH 03820<br><br>*Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Case No.:**  2021 CA 004133 B<br><br>**Jury Trial Demand** |

## COMPLAINT

Comes now, by and through his attorneys, Plaintiff Abdulkadir Mohamed (hereinafter also referenced as "Plaintiff Mohamed," "Plaintiff" or "Mr. Mohamed") to file this Complaint against George Washington University (further referenced herein as "Defendant GWU") and Lincoln National Corporation (also further referenced herein as "Defendant Lincoln National," "Lincoln Financial" or "Leave Services"), referred collectively herein as "Defendants." In so doing, Plaintiff hereby seeks relief pursuant to the Family and Medical Leave Act ("FMLA"),

1

29 U.S.C. § 2601 et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981, for claims of discrimination. Based on Defendants' discriminatory treatment, harassment, retaliation, and otherwise unlawful actions against Mr. Mohamed, he hereby seeks equity in the form of declaratory and injunctive relief, as well as compensatory, punitive, litigation expenses and reasonable attorneys' fees.

## JURISDICTION AND VENUE

1.   This Court has jurisdiction over the subject matter of this Complaint pursuant D.C. Code § 11-921. This Court also has jurisdiction over the subject matter of this complaint pursuant 28 U.S.C. § 1331 as the subject matter arises under federal United States laws, 29 U.S.C. § 2601 et seq. and 29 C.F.R. 825, et seq.

2.   Venue is proper in this Court in that the events and omissions giving rise to Plaintiff's claims occurred here in the District of Columbia and Defendants maintain operations is in the District of Columbia.

## PARTIES

3.   Plaintiff Mohamed is an Afro-American Black male of Ethiopian extraction who was a resident of the District of Columbia at the time he was employed by Defendant GWU.

4.   Defendant GWU is a private university located in the District of Columbia, which operates among other entities, a hospital.

5.   Defendant Lincoln National is a private corporation in the District of Columbia, which operates with agencies including Defendant GWU.

## FACTS

6.   Mr. Mohamed began employment at George Washington University on October 8, 1990 and was employed as a library assistant in Defendant GWU's Entrance Services Unit of Gelman Library. Mr. Mohamed was a valued employee and served as a trainer for new employees. For

2

several years, Jack Siggins, a Caucasian male, was the Head Librarian. Mr. Siggins often questioned Mr. Mohamed about how long he intended to work at the Gelman Library and whether he was ever going to retire. On one occasion, Mr. Siggins ended a meeting with Mr. Mohamed by shouting, "Get the hell out of my office!" and slamming the door as Mr. Mohamed left the office. Throughout his employment, Mr. Mohamed filed several EEO complaints alleging race discrimination. Mr. Mohamed also filed a race discrimination complaint against Robert Kavalek, a Caucasian male working in Defendant GWU's EEO office. Mr. Kavalek's conduct was hostile and inappropriate. Mr. Kavalek was later forced into resignation, but his position was assumed by his former assistant and close personal acquaintance, Peggy Enevoldsen, a Caucasian female. From her first day of employment to her departure in 2009, Ms.Enevoldsen treated Mr. Mohamed with little to no difference from that of Mr. Kavalek. Ms. Enevoldsen also played an integral part during the meeting whereby Mr. Siggins violentlyslammed the door. In 2008, Mr. Mohamed applied for a promotion as an Overnight and Weekend Library Manager and was denied. The position was filled instead by Keturah Solomon,a new outside hire who became Mr. Mohamed's immediate supervisor. Ms. Solomon's hiring was later followed by Jennifer Wesson, another outside hire who currently serves as Department Head of Access Service. Around 2013, Ms. Wesson promoted junior employee Tina Presson to Mr. Mohamed's title of Library Specialist/Student Coordinator and demoted Mr. Mohamed to Library Specialist.

7.  In April 2019, Mr. Mohamed learned that his father, who lived in Italy was seriously ill and considered taking leave to assist in caring for his father. Mr. Mohamed was given the approval to process his FMLA forms by his supervisors.

8.  In August 2019, Mr. Mohamed contacted Defendant GWU's Benefit Associate Erica

Strahin to inquire about applying for FMLA. On August 26, 2019, Ms. Strahin emailed Mr. Mohamed a copy of an FMLA medical certification, along with other related FMLA documents. Ms. Strahin instructed Mr. Mohamed to send the completed medical certification to LeaveServicesUnit@lfg.com.

9. Mr. Mohamed applied for FMLA leave on September 12, 2019 and requested September 24, 2019 to be the start date for leave. Defendant GWU utilized third party vendor, Lincoln Financial, to process FMLA requests from its employees, and Alex Eastman of Lincoln Financial sent Mr. Mohamed a letter acknowledging his FMLA application. The acknowledgment letter informed Mr. Mohamed that the letter was not approved and that he had fifteen days after his scheduled leave to begin submitting the medical certification. Lincoln Financial sent Defendant GWU an email notification on September 13, 2019 that Mr. Mohamed had applied for FMLA.

10. On September 16, 2019, Mr. Mohamed notified Defendant GWU through his George Washington University email about applying for FMLA leave. Mr. Mohamed requested FMLA leave from September 24, 2019 to December 1, 2019. Defendant GWU's Human Resources Manager Nia Phillips responded to Mr. Mohamed's email, notifying him that his FMLA application was under review by Lincoln Financial and that he would receive information regarding an approval or denial. Mr. Mohamed understood that FMLA leave would commence on September 24, 2019 upon Lincoln Financial's pending approval.

11. Prior to the FMLA leave, Mr. Mohamed called Ms. Eastman on September 19, 2019, asking whether he could receive an extension to submit the medical certification as Mr. Mohamed's father lived in a different country and it was uncertain whether documentation would arrive by the deadline. Ms. Eastman indicated that the fifteen-day period could not be extended, but that forms may be faxed or emailed. However, Ms. Eastman further stated that if

4

the application was denied during that fifteen-day period, Mr. Mohamed's application would be overturned once the documents were received. Mr. Mohamed began his FMLA leave on September 24, 2019.

12. On October 4, 2019, Mr. Mohamed emailed Ms. Eastman and made a second request to extend the deadline to submit the medical certification. Ms. Eastman indicated that the date could not be extended, but that Mr. Mohamed should submit the forms as soon as possible, as any denial made by Lincoln Financial for failing to submit the forms on time could be overturned.

13. Lincoln Financial denied Mr. Mohamed's FMLA application on October 9, 2019 and notified Mr. Mohamed through his George Washington University email. Lincoln Financial notified Defendant GWU of Mr. Mohamed's FMLA denial by email on October 10, 2019. Mr. Mohamed did not receive the notice from Lincoln Financial indicating that the FMLA leave request was denied. Ms. Strahin emailed Mr. Mohamed through his George Washington University email on October 11, 2019, notifying Mr. Mohamed that his FMLA leave had been denied by Lincoln Financial because he did not return the FMLA medical certification. Ms. Strahin instructed Mr. Mohamed to contact HR Manager Nia Phillips regarding his status. Ms. Strahin also stated that Mr. Mohamed should contact Lincoln Financial if he wanted to appeal the denial.

14. In late October 2019, Mr. Mohamed left the United States to travel to Italy and take care of his father.

15. On October 31, 2019, Defendant GWU sent Mr. Mohamed a final warning letter through his George Washington University email to get in touch with Defendant GWU or it would interpret his silence as job abandonment.

16. When Mr. Mohamed arrived in Italy late October 2019, Mr. Mohamed began to seek

FMLA medical certification. At that time, Mr. Mohamed learned then that he needed his father's consent before the physician could complete the medical certification. After Mr. Mohamed obtained his father's consent, medical certification was completed on November 6, 2019.

17. On November 7, 2019, Mr. Mohamed submitted his medical certification by email to Lincoln Financial for consideration through his personal email. Senior Leave Specialist Christina Chellis received Mr. Mohamed's documents and advised Mr. Mohamed to contact Defendant GWU regarding his employment status.

18. Despite Defendant GWU receiving Mr. Mohamed's FMLA request and the medical certification, Defendant GWU terminated Mr. Mohamed on November 8, 2019 for job abandonment. Mr. Mohamed did not know he had been terminated and continued to work with Lincoln Financial even after November 8, 2019. Mr. Mohamed emailed Ms. Eastman on November 8, 2019, after submitting the medical certification to ask about the status of his pending leave request. Ms. Chellis responded on behalf of Lincoln Financial that day, indicating that two to four business days were required to process the documentation and determine its sufficiency to approve Mr. Mohamed's leave request. Mr. Mohamed updated his email address with Lincoln Financial.

19. On November 11, 2019, Lincoln Financial instructed Mr. Mohamed that the submitted information was insufficient. On November 14, 2019, Mr. Mohamed responded by requesting until November 22, 2019 to provide a completed medical certification.

20. On or before November 21, 2019, Mr. Mohamed completed and submitted the medical certification, which noted a recommended return to work date of January 2020 and supplied it to Lincoln Financial.

21. However, Mr. Mohamed's FMLA leave still had not been approved as of November 21,

2019. Instead, Ms. Chellis instructed Mr. Mohamed to contact Defendant GWU about his employment status.

22. Mr. Mohamed emailed Ms. Phillips on November 22, 2019, stating that he tried to contact her earlier but could not access his George Washington University email. Ms. Phillips replied to Mr. Mohamed that he had been discharged from his position for job abandonment.

23. Mr. Mohamed did not receive Ms. Phillips email until 2020.

## COUNT I

### Violation of the Family and Medical Leave Act (FMLA)

24. Plaintiff Mohamed realleges and incorporates the allegations of all paragraphs above as set forth herein.

25. The Family and Medical Leave Act, 29 U.S.C. Sec. 2601 et seq. and 29 C.F.R. 825 et seq., requires all employers, including public employers, of twenty or more employees to provide up to twelve weeks of unpaid family leave for the birth of a child, adoption or foster care or to care for a seriously ill family member and up to twelve weeks of unpaid medical leave to recover from a serious illness rendering the employee unable to work. The leave may also be taken intermittently, in the case of a serious health condition, as defined in the Family and Medical Leave Act, including treatment for substance abuse. A violation is willful if the employer knows or shows reckless disregard for whether its conduct violates the FMLA.

26. At all pertinent times, Defendant GWU was an employer subject to the provisions of the Family and Medical Leave Act.

27. At all pertinent times, Plaintiff Mohamed was an employee entitled to invoke his rights under the Family and Medical Leave Act.

28. The Family and Medical Leave Act prohibits an employer from denying an employee

7

his/her rights under this Act and prohibits an employer from discriminating against an employee because he requests FMLA leave or retaliating against an employee because he takes FMLA leave.

29. In violation of the FMLA, Defendants denied Plaintiff Mohamed his right to take up to twelve weeks of leave under the FMLA and terminated his employment for taking leave under the FMLA. Beginning in September 2019, Plaintiff Mohamed submitted a request for FMLA leave to provide care for his father in Italy. Defendant GWU knew Plaintiff was requesting leave to care for his father, that Plaintiff's father resided in Italy, and Plaintiff would need to travel out of the country to obtain medical certification in Italy and return it to Defendants. Defendant GWU negligently required Plaintiff to go through a third party to request FMLA leave. Plaintiff Mohamed was terminated in November 2019 allegedly for job abandonment.

30. Defendants at all relevant times had actual and constructive knowledge of Plaintiff Mohamed's request for FMLA leave, that he had traveled to Italy to care for his father, and provided a medical certification certifying his father's illness. Despite knowing Plaintiff's request for FMLA leave, Defendants interfered with Plaintiff's FMLA request and retaliated against Plaintiff for taking FMLA leave by denying his request for FMLA leave, requesting onerous medical documentation, and terminating Plaintiff while he was on leave caring for his father. Defendants conduct were willful in that they knew or showed reckless disregard for whether their conduct violated the FMLA.

31. Defendants had no legitimate business reason for any of such acts.

## COUNT II

### Violation of the Civil Rights Act of 1866 42 U.S.C. § 1981

### Race Discrimination

8

32. Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

33. At all pertinent times, Defendant GWU was an employer within the meaning of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

34. At all pertinent times, Plaintiff was an employee within the meaning of and entitled to protection under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

35. The Civil Rights Act of 1866, 42 U.S.C. § 1981, provides that all persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts as enjoyed by white citizens and prohibits an employer from discriminating against any individual with respect to the individual's compensation, terms, conditions or privileges of employment because of such individual's race, ancestry, or ethnicity. Section 1981 forbids all racial discrimination in the making of private as well as public contracts.

36. Defendants, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, knowingly and intentionally engaged in unlawful discrimination against Plaintiff Mohamed and subjected him to disparate treatment based on his race and ethnicity. Defendants subjected Plaintiff Mohamed to several acts of discrimination during his employment and sought a reason to terminate his employment. In September 2019, Plaintiff requested FMLA leave to travel to Italy to care for his father. Despite knowing that Plaintiff had left the country and was in Italy caring for his father, Defendants demanded onerous medical documentation and certifications, and ultimately Defendants denied Plaintiff's request for FMLA leave and terminated his employment. Defendants regularly approve FMLA leave for Caucasian employees without requiring the level of medical documentation required of Plaintiff Mohamed.

37. As a direct and proximate cause of Defendants' actions, Plaintiff Mohamed has suffered

emotional distress, pain, and suffering.

38. Defendants had no legitimate business reason for any such acts. Plaintiff Mohamed is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendants may have engaged in other discriminatory practices that are not yet fully known.


**WHEREFORE, Plaintiff prays as follows:**

A: That the Court enter judgment against Defendants for violations of the Family and Medical Leave Act, 29 U.S.C. Sec. 2601 and 29 C.F.R. 825 et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981;

B: That the Court award to Plaintiff Mohamed damages in an amount equal to all of his accumulated lost wages and benefits, including back pay, front pay and benefits; compensatory and liquidated damages for the financial and emotional harm caused by Defendants, including prejudgment and post-judgement interest and any other damages permitted under the FMLA;

C:      Award payment of all fees, costs, expenses, including attorney's fees and expert fees;

D:      Reinstatement of Plaintiff Mohamed to his position with Defendant GWU; and

E:      That the Court award Plaintiff Mohamed such other relief as to which he may be deemed entitled.


Date: November 8, 2021                                        Respectfully submitted,


                                                  _____/s/ David A. Branch_____
                                                  David A. Branch, D.C. Bar No.: #438764
                                                  Law Offices of David A. Branch &
                                                  Associates, PLLC

10

1828 L Street, NW, Suite 820
Washington, DC 20036
Phone: (202) 785-2805
Fax: (202) 785-0289
Email: davidbranch@dbranchlaw.com

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all claims against Defendants.