UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULKADIR MOHAMED,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE WASHINGTON UNIVERSITY<br><br>and<br><br>LINCOLN NATIONAL CORPORATION<br><br>Defendants. | Case No. 1:22-cv-00812 (TNM) |

## MEMORANDUM ORDER

George Washington University terminated Abdulkadir Mohamed from his position at the University's library for job abandonment. Mohamed then sued the University and a third-party benefits administrator, Lincoln National Corporation (Lincoln). He alleges Defendants discriminated against him based on race in violation of 42 U.S.C § 1981, as well as discriminated and retaliated against him in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq*. Both Defendants now move to dismiss the Complaint, except as to Mohamed's FMLA retaliation claim against the University. For the reasons below, the Court will grant the motion.

I.

Mohamed began working for George Washington University (GWU or the University) in 1990 as a library assistant. *See* Compl. ¶ 6, ECF No. 1-1. Mohamed—the only Ethiopian member of the library staff—ran into several issues throughout his employment. *Id*. He alleges

1

his direct supervisor was orally aggressive towards him and that an Equal Employment Office (EEO) employee was "hostile and inappropriate." *Id.* In 2008, he applied for a promotion but was denied. *Id.* And in 2013 he was demoted. *Id.* Because of these alleged incidents, Mohamed filed several formal complaints of racial discrimination with the University's EEO. *Id.*

This suit, however, arises out of an incident that began in April 2019. Around that time Mohamed learned that his father—who lived in Italy—was seriously ill. Mohamed contacted GWU's Benefits Associate to ask about applying for leave. *Id.* ¶ 8. The University sent him a copy of a FMLA medical certification and instructed him to send the completed documents to Lincoln National Corporation—a third-party vendor GWU used to administer FMLA benefits. *Id.* ¶¶ 8, 9. Mohamed applied for leave in September 2019, after which GWU informed him the request was under review. *Id.* ¶ 10. Lincoln also contacted him, conveying he had not yet been approved and had 15 days to submit a medical certification form. *Id.* ¶ 11.

Mohamed asked for an extension to submit the forms, which Lincoln denied. *Id.* The company advised him he could either fax or email the form and that failure to complete the form would lead to the denial of his leave request—although that denial could be later overturned. *Id.* Mohamed began leave anyway and the submission deadline passed. *Id.* ¶ 12. A week after the deadline Mohamed again sought (and was denied) an extension. *Id.* Lincoln then formally denied FMLA leave and told Mohamed to contact the University's HR department about his employment status. *Id.* Mohamed forged ahead and left for Italy in late October. *Id.* ¶ 14.

The University sent him a final warning letter, saying that if he failed to contact GWU they would interpret his silence as "job abandonment." *Id.* ¶ 15. While abroad, Mohamed finally began gathering the necessary documentation. *Id.* ¶ 16. In early November, he sent the

medical certification form to Lincoln.  *Id.* ¶ 17.  Lincoln instructed him to contact GWU about his employment status.  *Id.*  The University eventually terminated Mohamed for job abandonment.  *Id.* ¶ 18.  Some weeks later he finally emailed GWU and learned the University had discharged him.  *Id.* ¶ 22.

Mohamed now sues Lincoln and GWU for retaliation and discrimination in violation of the FMLA and for racial discrimination in violation of 42 U.S.C. § 1981.  Defendants move to dismiss several claims under Rule 12(b)(6), and their motion is now ripe.

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint must raise "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility."  *Twombly*, 550 U.S. at 545–46.  And in evaluating a motion to dismiss, legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not afforded the presumption of truth.  *Iqbal*, 556 U.S. at 678.  The Court is limited to "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice."  *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).

## III.

Defendants offer several arguments in support of dismissal.  Lincoln says it cannot be held liable under FMLA or § 1981 because it is not Mohamed's "employer" under either statute.

And the University argues Mohamed has not pled facts sufficient to support a claim under § 1981. The Court considers each in turn.

### A.

To state a claim to relief under FMLA, Mohamed must plausibly allege that Lincoln was his "employer." *See* 29 U.S.C. §§ 2611(4)(A), 2615(a). He has not done so here.

Mohamed undisputedly worked for GWU, so it might seem odd to call Lincoln his employer. But federal regulations provide that multiple entities may simultaneously be an individual's "employer" for purposes of antidiscrimination law. *See* 29 C.F.R. § 825.106 (the Joint Employer Regulation).[1] The regulations say a third-party may be a joint employer where it has the "right to hire, fire, assign, or direct and control the client's employees," or it "benefits from the work that the employees perform." *Id.* But that provision acknowledges certain entities, known as Professional Employer Organizations (PEOs), will "contract[] with client employers to perform administrative functions such as payroll, benefits, regulatory paperwork, and updating employment policies." *Id.* § 825.106(b)(2). PEOs can sometimes qualify as a joint employer, but not where they "merely perform[] such administrative functions." *Id.*

The D.C. Circuit has not adopted an authoritative interpretation of these provisions. *See Miles v. Howard Univ.*, 653 Fed. Appx. 3, 4 (D.C. Cir. 2016). Other circuits employ a variety of standards, but they almost universally focus on whether the defendant exercised control over the employee or his working conditions. *See, e.g., Moldenhauer v. Tazwell-Pekin Consol. Comms.*

---

[1] FMLA itself does not address situations in which joint-employer liability will be imposed. But Congress has instructed the Department of Labor to "prescribe such regulations as are necessary to carry out" the purpose of FMLA. 29 U.S.C. § 2654. In turn, the Department promulgated regulations explaining circumstances where a joint-employment relationship may exist. *See* 29 C.F.R § 825.106. No party has challenged these regulations here.

4

*Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008) ("for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee"); *Grace v. USCAR*, 521 F.3d 665, 666–67 (6th Cir. 2008) (finding a joint employer relationship where defendants "exercised significant control" over the employee).

Reviewing the Complaint, Mohamed has not alleged facts suggesting Lincoln has the requisite control or authority over him to qualify as a "joint employer." He does not allege Lincoln had the right to "hire, fire, [or] assign" him. 29 C.F.R. § 825.106. Nor does he allege Lincoln could "direct and control" his day-to-day work responsibilities. *Id.* Indeed, the Complaint suggests the opposite—Lincoln instructed Mohamed to contact GWU about his employment status but continued to work with him on FMLA leave even *after* he was terminated. Compl. ¶¶ 17, 19, 20. It seems Lincoln is the prototypical PEO that "contracts with [GWU] to perform administrative functions such as . . . benefits"—namely, administering FMLA benefits. 29 C.F.R. § 825.106(b)(2). And there is no evidence Lincoln "benefits" from Mohamed's work. *Cf. id*. Because Lincoln "merely performs such administrative functions," it is not a joint employer. *Id*.

Mohamed at times conflates the two Defendants' actions. He relies heavily on allegations like "Defendants . . . interfered" and "Defendants . . . retaliated," Compl. ¶ 30, but provides no factual support to make plausible that the parties acted in tandem. The Court "need not [] accept inferences drawn by [a] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (cleaned up); *cf. Miles v. Univ. of the Dist. of Colum., et al.* 2013 WL 5817657 at *9 (D.D.C. Oct. 30, 2013) (finding the statement that "defendants jointly controlled. . . the ability. . . to terminate" to be conclusory). This kind of off-handed reference to both Defendants adds little.

5

Lincoln is not Mohamed's employer nor is it a joint employer under 29 C.F.R § 825.106(b)(2).  Mohamed's FMLA claim against the company therefore must be dismissed.

**B.**

Now for the 42 U.S.C. § 1981 claims.  That provision prohibits intentionally discriminating with respect to the "termination" of the "benefits, privileges, terms, and conditions" of employment.  42 U.S.C. § 1981; *see also Ayissi-Etoh v. Fannie Mae*, 712 F.3d 562, 576 (D.C. Cir. 2013).  To make out a prima facie § 1981 case, a plaintiff must show "[he] is a member of a protected class, (2) [he] suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of [her] membership in the protected class)." *Copeland v. Arklay LLC*, 273 F. Supp. 3d 69, 74 (D.D.C. 2017).  Alternatively, a plaintiff may proceed "by producing direct evidence of discrimination." *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161–62 (D.C. Cir. 2015).

**i.**

As explained above, Mohamed has not shown Lincoln is his employer.  On that basis alone the § 1981 claim against the company should be dismissed.  But even assuming Lincoln is a covered joint employer, Mohamed has not alleged facts suggesting he was denied leave because of his race.

Mohamed's § 1981 claim against Lincoln largely rests on a generalized allegation: "Defendants regularly approve FMLA leave for Caucasian employees without requiring the level of medical documentation required of Plaintiff Mohamed."  Compl. ¶ 36.

A plaintiff may support an inference of discrimination by showing he was treated differently than similarly situated co-workers.  *See George v. Leavitt*, 407 F.3d 405, 412 (D.C.

6

Cir. 2005). But a single conclusory allegation that "similarly situated [employees] of different . . . race[s] have been treated differently and more favorably" cannot show disparate treatment. *Iqbal*, 556 U.S, at 644. Rather, a plaintiff must identify such an employee. *See Doe v Am. Fed. of Gov't Emps.*, 554 F. Supp. 3d 75, 103 (D.D.C. 2021) (finding a plaintiff's assertion he was similarly situated to other employees a legal conclusion); *Mesumbe v. Howard Univ.*, 706 F. Supp. 2d 87, 92 (D.D.C. 2010) (same).

The Complaint here does nothing of the sort. Mohamed neither names a Caucasian employee who received preferential treatment nor identifies a person who sought similar leave. Defs' Mot to Dismiss. at 10, *see generally* Compl. Since the "plaintiff has provided the Court with no details about the other employees that would enable one to draw an inference as to whether they were similar," there is no concomitant inference of discrimination. *Rehab Auf v. Medford*, 20-cv-0815, 2021 WL 3025222 at *11 (D.D.C. Mar. 26, 2021). Without more, Mohamed has not pled a viable § 1981 claim for discrimination against Lincoln.

### ii.

Now for Mohamed's § 1981 claim against GWU. A § 1981 plaintiff must plead "that but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). That is, Mohamed "must establish a nexus between defendants' alleged discriminatory motive and adverse action." *Easaw v. Newport*, 253 F. Supp. 3d 22, 30 (D.D.C. 2017).

Mohamed alleges that GWU "subjected [him] to several instances of discrimination . . . and sought a reason to terminate his employment." Compl. ¶ 36. The "instances" Mohamed refers to were six years old at the time of his firing. Compl. ¶ 6. He does not allege that any of the parties involved were still employed at the time of his termination. Nor does he plead that

any of those parties played a role in the firing decision. Rather, he simply states that GWU sought to terminate him because of his race. *Id.* ¶ 36. This is not enough. To adequately show causation, "a plaintiff cannot merely invoke his race, but must allege some facts to show that race was the reason for defendant's action." *Wilson v. DNC Services Corp.*, 315 F. Supp. 3d 392, 400 (D.D.C. 2018), *aff'd*, 831 F. App'x 513 (D.C. Cir. 2020). A few oblique references to years-old workplace hostility does not support that kind of inference.

Mohamed urges the court to overlook these factual deficiencies, relying on *Yazzie v. Nat. Org. for Women*. 19-CV-3845, 2021 WL 1209347 (D.D.C. Mar. 30, 2021). There, a court found a plaintiff could proceed with a § 1981 claim based on voluminous allegations of past discriminatory mistreatment. *See id.* at *12. Particularly salient, the plaintiff alleged her job performance was excellent throughout her employment—dispelling any suggestion that her termination was for legitimate reasons. *Id.* at *12. Even with numerous detailed allegations, the *Yazzie* court thought the viability of the § 1981 claim was a "close question." *Id.* at *11.

*Yazzie* is no help to Mohamed. His Complaint contains nothing like the litany of racially discriminatory conduct at issue in that case. He does not allege he was fired at the urging of a supervisor previously involved in discriminatory treatment. He does not allege relevant instances of discriminatory conduct by other employees. And unlike *Yazzie*, Mohamed's own allegations suggest GWU terminated him for a neutral, nondiscriminatory reason—he took an extended leave without approval. The Court cannot ignore a plaintiff's own allegations of a neutral explanation for termination. *See, e.g.*, *Adetoro,* 2020 WL 7122858, at *5 ("Throughout the Second Amended Complaint, the [plaintiffs] offer multiple, non-racial explanations for why they may have been terminated from the Academy. That they also sprinkled in a few allegations of race discrimination is not enough.").

At bottom, Mohamed relies on an outdated pleading standard. He says a court may dismiss a § 1981 claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Opp. 14 (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002)). But as every first-year law student learns, the Supreme Court repudiated that more-liberal rule in *Twombly*. *See* 550 U.S. at 562 ("[T]here is no need to pile up further citations to show that *Conley*'s 'no set of facts' language has been questioned, criticized, and explained away long enough."). The modern standard requires Mohamed to affirmatively plead facts suggesting his race was the but-for cause of his termination. He did not—so the § 1981 claim against GWU must be dismissed.

Mohamed also alleges GWU discriminated against him in administering the FMLA process. For the reasons stated above, *see supra* Part III.B, a single conclusory allegation that he was treated differently than white co-workers cannot sustain this claim. It is dismissed as well.

## IV.

Both Defendants asks the Court to dismiss these claims with prejudice. That is unjustified. "A dismissal with prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (cleaned up). Mohamed could supplement his Complaint with new factual allegations that state a plausible claim to relief, so his claims will be dismissed without prejudice. And Mohamed may proceed with his FMLA retaliation claim against GWU, which the University did not seek to dismiss.

The Defendants' Motion to Dismiss is therefore GRANTED in part and the referenced claims are DISMISSED without prejudice.

Dated: August 9, 2022                                         TREVOR N. McFADDEN, U.S.D.J.