## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ABDULKADIR MOHAMED,** | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-812 (TNM) |
| **GEORGE WASHINGTON UNIVERSITY,** *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM ORDER</u>

Parties must follow discovery rules and court orders.  When they choose not to, courts may punish them.  Such sanctions can help deter that party and others from behaving badly.  And they can remedy misconduct.

Here, a man sued his former employer.  During discovery, he flouted his obligations and a court order, so his past employer moved for sanctions.  Because the man provides no good reason for his blatant misconduct, the Court grants that motion for sanctions:  He must pay attorneys' fees and costs caused by his misbehavior.  And he is precluded from making various arguments in later proceedings due to his discovery shenanigans.

### I.

Abdulkadir Mohamed sued his employer, George Washington University, and a benefits administrator under the Family & Medical Leave Act and the Civil Rights Act.  *See* Compl. at 1, ECF No. 1-1.  In his view, GW had interfered with his rights under the FMLA, retaliated against him, and discriminated against him based on his race.  *See generally id.*  Last year, the Court dismissed much of Mohamed's case, but let his FMLA claim go forward.  *See* Mem. Order at 1,

ECF No. 14.  Both sides have now moved for summary judgment.  *See* Mots. for Summ. J., ECF Nos. 19, 25.  Plus, GW asks the Court to sanction Mohamed for flouting various discovery obligations and a court order.  *See* Mem. in Supp. of Sanctions (Mot.), ECF No. 20-1.  The Court addresses GW's sanctions motion here and will handle summary judgment later.

## II.

Rule 37 allows district courts to sanction parties that misbehave during discovery.  For instance, a court may "issue . . . just orders" when a party refuses to obey a discovery order.  Fed. R. Civ. P. 37(b)(2)(A).  And a court may sanction a party who "fails to provide information . . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

District courts also have inherent power to sanction unruly parties.  Courts may use that power to "protect their integrity and prevent abuses of the judicial process."  *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995).  And their options "include fines, awards of attorneys' fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing adverse evidentiary inferences or precluding the admission of evidence."  *Id.* at 1475.  That power "must be exercised with restraint and discretion."  *Id.* (cleaned up).

When considering whether to impose a sanction, a "district court may consider the resulting prejudice to the other party, any prejudice to the judicial system, and the need to deter similar misconduct in the future."  *Klayman v. Jud. Watch, Inc.*, 6 F.4th 1301, 1312 (D.C. Cir. 2021) (cleaned up).  And when a district court has decided to impose sanctions, its choice of which one "should be guided by the concept of proportionality."  *Id.* (cleaned up).

## III.

Mohamed has behaved poorly, and his misconduct warrants sanctions.

**A.**

GW offers a laundry list of complaints about Mohamed's discovery misconduct.  Those can be divided into two main categories.

*1. Inadequate discovery responses.*  To start, Mohamed refused to provide basic discovery.  For instance, when asked in an interrogatory about his recent work history, Mohamed responded: "Objection.  Plaintiff herein disagrees with disclosure of post and or current status of employment."  Mot. at 2–3.  Why did Mohamed disagree with this relevant question?  He did not say.  Or take Mohamed's response to a request for production of documents related to his post-GW job search.  He again objected: "Plaintiff hereby reserves the right to privacy."  *Id.* at 4.  Why he has a "right to privacy" in his "resumes, emails," or "letters to and from prospective employers" against the opposing party in a lawsuit, Mohamed again did not say.  *Id.*  In any event, plaintiffs should recognize that by filing suit, they open themselves up to scrutiny, just as they will seek to scrutinize defendants.  Those who want to avoid such nuisances should think twice before suing.

Mohamed also lodged nonsensical objections to reasonable discovery requests aimed at the heart of his claims.  Mohamed asked to take FMLA leave to care for his ailing father in Italy.  Yet he waited over a month after taking his leave to actually travel there.  And when he was asked to provide any *documents* about what he had done in the month before setting off for Italy, he responded with this:  "Objection. Plaintiff made preparations for travel to attend his father.  Being of limited income, relying on his salary from Defendant, Plaintiff traveled to Italy when it was feasible."  Declaration of Christine M. Constantino (Constantino Decl.), Ex. 2, ECF No. 20-2.  That is no basis for objecting to discovery.

Irked, GW asked Mohamed to supplement his lacking responses.  *See* Const. Decl. ¶ 7.
After more than two weeks of radio silence from Mohamed, GW asked the Court to schedule a
discovery teleconference.  *See id.* ¶ 9.  The Court then ordered that Mohamed supplement his
discovery responses by April 10, 2023, and extended discovery another two weeks to April 14.
*See* Min. Entry (March 27, 2023).

*2. Flouting the Court's order*.  Mohamed ignored the Court's order and provided nothing
by April 10.  *See* Constantino Decl. ¶ 12.  At his deposition two days later, Mohamed suggested
that he did not believe that he needed to supplement by April 10: "We have a grace period here."
Mot. at 7.  And when reminded that he had been ordered to supplement by April 10, he
responded, "Okay.  April 10th.  Okay.  Well, but the grace period goes through the 16th.  So I
don't believe I'm late in that regard."  *Id.*  He was late, though.  *See* Min. Entry (March 27, 2023)
(memorializing Order as "Plaintiff's supplemental discovery due by 4/10/2023.").  There was no
"grace period."

More troubling, Mohamed's deposition testimony, taken six months after the initial
discovery requests, suggests that he did not even *try* to comply with his discovery obligations.
When asked if he had searched his Gmail account for responsive documents, he replied, "Not
that I remember, no.  Not that I remember."  Mot. at 8.  And it appears that he had failed to
search his phones either.  *See* Mot. at 9–10 ("Q: Did you give any of your phones to [your
lawyer] or anyone else to be searched.  A: No.  No one asked me.").  Mohamed also admitted
that he had not yet finished searching a "cabinet" full of documents that he kept in at his
apartment.  Mot. at 11 ("Q: Did you go through every file in the filing cabinet to look for
documents?  A: I'm working – yeah, I be working on it.").

Mohamed eventually supplemented his discovery responses, but his supplement was inadequate, too.  Twenty-nine minutes before discovery closed, and four days after his extended deadline expired, Mohamed provided just five more pages of documents.  *See* Constantino Decl. ¶¶ 13–14.  But he still withheld documents that he testified he had during his deposition: a full travel itinerary, a notebook where he apparently took notes about phone calls with GW staff, and others.  *See* Mot. at 12–16.  Indeed, Mohamed testified that he had his original FMLA certification form (perhaps the most important document in this case), but then never produced it. *See id.* at 20.

**B.**

Because of this misconduct, GW asks for various sanctions.  It requests costs and attorneys' fees for (1) its initial letter to Mohamed asking him to supplement, (2) the discovery teleconference, (3) a portion of Mohamed's deposition, and (4) briefing this sanctions motion. *See id.* at 21.  Plus, it asks the Court to preclude Mohamed making various arguments because of his failure to provide key supporting evidence in discovery.  *See* Mot. at 22–23.  Those arguments include:

- That he needed to travel to Italy to take care of his father and that he did, in fact, take care of his father,
- That he stopped communicating with GW because a GW employee, Nia Phillips, had told him that GW was no longer his employer; and
- That he tried to find work after he was fired by GW.

Mohamed opposes these sanctions.  *See generally* Opp'n, ECF No. 27.  But rather than addressing GW's claims, Mohamed reverts to whataboutism.  He simply complains that GW provided some discovery late and that it refused to make a witness available for a deposition. *See id.* at 2.  The closest he gets to a substantive response about his own missing discovery is a

conclusory statement that he "complied with his discovery obligations and provided all responsive documents in his possession." *Id.* at 5.

Mohamed never explains why he flouted the Court's order to supplement by April 10. He just says that GW "did not supplement its own discovery until April 10." *Id.* at 3. How that makes it acceptable for *him* to disobey the Court's order to supplement by April 10, he does not say. Nor does Mohamed explain why he testified that he had certain documents, but then never turned them over. Plus, he never addresses his own testimony suggesting that he had not even *tried* to search his email or phones in response to the initial discovery requests.

Mohamed does make one substantive argument. But it gets him nowhere. He says that he should not be precluded from arguing about his conversation with GW employee Nia Phillips because GW "absolute[ly] refus[ed] to make [her] available for a deposition." *Id.* at 2. But Mohamed did not even seek her deposition until a few days before the originally scheduled close of discovery. *See* Reply at 5, ECF No. 30. GW then told Mohamed that Phillips was available on April 6, but not after that due to a scheduled vacation. *See id.* Mohamed's lawyer responded simply "Ok thanks." *See id*, Ex. 3. But when GW followed up a few days later to confirm, Mohamed's lawyer said that he was tied up other depositions and asked to schedule the deposition during Phillips's vacation. *See id.* GW refused. *See id.* at 6. This small dispute provides no cover for Mohamed's failure to produce his notebook allegedly detailing the conversation between him and Phillips, a notebook that he testified he had.

**C.**

The Court finds that GW's requested sanctions are appropriate.  Mohamed's misconduct

warrants attorneys' fees and costs under both Rule 37(c)(1)(A) and the Court's inherent

authority.  Mohamed never explained how his failure to provide adequate discovery was either

justified or harmless.  Indeed, his deposition suggests that he did not even try to comply with his

obligations, let alone promptly.  Mohamed had a chance to clear the record and explain away his

apparent misbehavior.  But instead, he ignored nearly every single one of GW's arguments.  He

all but concedes them.

Mohamed's misconduct also warrants a sanction precluding him from making various

arguments.  As detailed above, on each point highlighted by GW, Mohamed failed to provide

key discovery, even after the Court ordered that he supplement his discovery responses.  *See* Fed.

R. Civ. P. 37(b)(2) (allowing various sanctions when a party disobeys a discovery order).

Fairness dictates that he should not be allowed to withhold evidence on one hand, while making

claims involving that evidence on the other.

**IV.**

Based on the above reasons, the law, and the parties' briefing, it is

**ORDERED** that Defendant's [20] Motion for Sanctions is **GRANTED**.  And it is

**ORDERED** that Plaintiff shall pay GW's reasonable costs associated with (1)

Defendant's initial letter to Mohamed asking him to supplement, (2) the discovery

teleconference, (3) 25% of his deposition, and (4) Defendant's briefing of this sanctions motion.

And it is

**ORDERED** that Plaintiff is precluded from making the following arguments:  That he

needed to travel to Italy to take care of his father and that he did, in fact, take care of his father;

that he stopped communicating with GW because a GW employee, Nia Phillips, had told him that GW was no longer his employer; and that he tried to find work after he was fired by GW.

**SO ORDERED**.

Dated: September 15, 2023                    _____
                                             TREVOR N. McFADDEN, U.S.D.J.